# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 22, 2021

Lyle W. Cayce
Clerk

No. 20-50218

JOHN THOMPSON,

*Plaintiff—Appellant,*

*versus*

MICROSOFT CORPORATION,

*Defendant—Appellee.*

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:18-CV-680

Before HIGGINBOTHAM, SOUTHWICK, and ENGELHARDT, *Circuit Judges*.

PATRICK E. HIGGINBOTHAM, *Circuit Judge*:

John Thompson appeals the district court's grant of summary judgment for his employer, Microsoft, on his claims under the Americans with Disabilities Act ("ADA") for failure to accommodate, discrimination, and creation of a hostile work environment. We affirm.

## I

Thompson's appeal arises from his efforts to obtain accommodations for his Autism Spectrum Disorder ("ASD"). He first requested

No. 20-50218

accommodations from Microsoft's human resources group in 2015 when he was an account technology strategist. Some of his requested accommodations included working on only one project at a time, provision of an assistant for administrative tasks, and permission to work from home. During negotiations about his requests, Thompson expressed interest in transferring to an Enterprise Architect ("EA") role, which is "a senior-level executive position" serving as a liaison between Microsoft and its clients.

Microsoft informed Thompson that some of his requested accommodations were incompatible with the EA role because the role required "strong leadership and people skills" and "[e]xecutive-level interpersonal, verbal, written and presentation skills." Thompson withdrew his request for accommodations and asked that his new manager not be informed about his ASD diagnosis. He then applied for an EA position and was recommended as a good fit for the role. Thompson was hired as an EA in Austin, Texas. He relocated there from New Jersey and began work in the fall of 2015.

Thompson's performance as an EA did not go smoothly. His first, and only, assignment was with Enterprise Holdings. Despite giving Thompson some initial positive feedback, his manager soon indicated "concerns with [Thompson's] skillset, experience and ability to lead and develop the required business architecture and framework." Specifically, Thompson was not submitting deliverables on time and the quality of the work he did complete was subpar. At one point, the client itself requested that Thompson not continue on the engagement. As a result of these issues and the client's dissatisfaction, Microsoft removed Thompson from the Enterprise Holdings engagement shortly after joining it in January 2016.

In subsequent conversations about his poor performance, Thompson revealed to his EA manager that he was autistic. His manager then contacted

No. 20-50218

Microsoft's human resources and benefits group in February and temporarily removed Thompson from the EA pool, meaning he was not considered to be staffed on any future EA engagements during this time. Thompson again began requesting accommodations.

Thompson submitted a second formal request for accommodations on April 2, 2016. His requests were

- A noise-cancelling headset;
- A specialized job coach with experience coaching executives and/or technologists with ASD;
- Training classes on managing ASD and ADHD in the workplace,
- An individual to assist in translating/interpreting information provided verbally by Thompson into the appropriate written format (i.e. PowerPoint, Word, email, etc.);
- A scribe to record meeting notes for Thompson;
- An individual to assist with administrative tasks, such as travel booking, time and expense reporting, meeting scheduling, routine paperwork, etc., as well as with monitoring timeliness and providing reminders;
- A handheld voice recorder and access to a voice transcription service;
- Specialized software to support time management and organization for individuals with ASD and ADHD;
- Provision of specialized training in managing individuals with ASD and ADHD to Thompson's managers; and
- Permission for Thompson to bring an advocate to performance reviews.

On May 16, Microsoft informed Thompson that it agreed to some of the requests—such as the noise-cancelling headset, specialized job coach,

No. 20-50218

time-management and organization software, and providing training to Thompson's managers on managing employees with ASD—but found others unreasonable. In particular, Microsoft raised concerns about providing Thompson with an individual to assist in translating his verbal information into writing because EAs were expected to clearly communicate their ideas to clients and "[t]he work product would be unacceptably watered down if filtered through a person with less or no experience in basic role requirements of architecture, strategic development, business alignment . . ., and other areas." Microsoft was also concerned that Thompson's request for individuals to help him with administrative tasks and recording meeting notes was unreasonable because the EA role requires responding to clients and others quickly and under dynamic conditions. Finally, Microsoft noted that Thompson's requests would require it to hire full-time assistance to handle basic email and administrative tasks for Thompson. As such, Microsoft concluded that these requests would excuse him from performing essential EA functions.

Thompson and Microsoft engaged in additional negotiations through July as to whether Thompson could suggest alternate accommodations that Microsoft would find reasonable. Thompson continued to insist on the accommodations Microsoft found unreasonable, including requests for a person(s) to assist in translating Thompson's verbal thoughts into written form, record meeting notes, and assist with administrative tasks. Microsoft informed Thompson that it continued to find these accommodations unreasonable. Ultimately, Microsoft deemed it could not reasonably accommodate Thompson as an EA, removed him from the EA role, and decided to place him in a job-reassignment process.

Thompson objected to being reassigned, stating that he was willing to accept the accommodations Microsoft was willing to provide and make alternative arrangements for his outstanding needs. On July 21, Microsoft

No. 20-50218

nevertheless proceeded with placing him on job reassignment and began working with him to find an open position with Thompson's requested accommodations in mind. Thompson provided his résumé to the Microsoft employee assisting him with job reassignment but did not express interest in any new positions because he would not consider jobs outside of the Austin area or those that paid a lower salary. Instead, Thompson took long-term disability leave in September 2016 and has not returned to work.[1]

## II

In 2018, Thompson sued Microsoft, raising claims of failure to accommodate, discrimination, and hostile work environment under the ADA based on his time both as an account technology strategist and an EA.[2] Microsoft moved for summary judgment on each claim. In responding to Microsoft's motion, Thompson only focused on his claims as they related to his time as an EA. The district court referred the motion to the magistrate, and the magistrate recommended granting the motion. Thompson objected to each conclusion by the magistrate. The district court conducted a de novo review, overruled Thompson's objections, and adopted the magistrate's report and recommendations, granting Microsoft's motion for summary judgment in full.

Thompson now appeals and argues that the district court erred in granting Microsoft summary judgment on his failure-to-accommodate,

---

[1] Microsoft clarified at oral argument that Thompson remains a Microsoft employee while on long-term disability leave.

[2] Thompson also raised a retaliation claim in his complaint, but the district court found that he "abandoned that claim by failing to defend it in his Response to Microsoft's Motion for Summary Judgment." Thompson does not attempt to raise the retaliation claim on appeal.

No. 20-50218

discrimination, and hostile-work-environment claims as they relate to his time as an EA.

## III

We "review a district court's grant of summary judgment *de novo*, viewing all facts and drawing all inferences in a light most favorable to the non-moving party."[3] Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5] We "may affirm the district court's grant of summary judgment on any ground supported by the record and presented to the district court."[6]

## IV

### A

We turn first to Thompson's failure-to-accommodate claim. Under the ADA, an employer must "make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'"[7] "To prevail on a failure-to-accommodate claim, the plaintiff must show (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and

---

[3] *Harville v. City of Houston, Miss.*, 945 F.3d 870, 874 (5th Cir. 2019).

[4] Fed. R. Civ. P. 56(a).

[5] *Harville*, 945 F.3d at 874 (internal quotation marks and citation omitted).

[6] *Salinas v. R.A. Rogers, Inc.*, 952 F.3d 680, 682 (5th Cir. 2020) (internal quotation marks and citation omitted).

[7] *Delaval v. Ptech Drilling Tubulars, LLC*, 824 F.3d 476, 479 (5th Cir. 2016) (quoting 42 U.S.C. § 12112(b)(5)(A)).

No. 20-50218

(3) the employer failed to make reasonable accommodations for such known limitations."[8]

"A plaintiff can establish that he is qualified by showing that either (1) he could perform the essential functions of the job in spite of his disability, or (2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job."[9] Thompson agrees that he was unable to perform the EA role without any accommodations but argues that there is a genuine issue of material fact as to whether reasonable accommodations would have allowed him to perform EA essential functions. He also argues that Microsoft failed to negotiate reasonable accommodations in good faith.

Reasonable accommodations include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations."[10] "The ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so."[11] Essential functions are those that "bear more than a marginal relationship to the job at issue."[12] In determining whether a function is essential, we look to

---

[8] *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (internal quotation marks and citation omitted).

[9] *Id.* (internal quotation marks and citation omitted).

[10] 42 U.S.C. § 12111(9)(B).

[11] *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999) (citations omitted).

[12] *Chandler v. City of Dall.*, 2 F.3d 1385, 1393 (5th Cir. 1993) (citation omitted).

the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, and the consequences of not requiring the employee to perform the function.[13]

Doing so, we conclude that Thompson's requests for individuals to assist him with translating verbal information into written materials, recording meeting notes, and performing administrative tasks were unreasonable because they would exempt him from performing essential functions. The EA job description states that the EA is a "[c]onsulting" role involving "constant interaction with the Account Team dedicated to their customer" and "work[ing] closely with other Architects, Consultants, and other experts." Qualifications and requirements include "strong . . . people skills," the "ability to coordinate physical and virtual resources and initiatives," "[e]xecutive-level interpersonal, verbal, written and presentation skills, . . . [and the] ability to provide a trusted voice at the decision-making table." Microsoft also determined that these requested accommodations interfered with the EA's essential functions involved in communicating with the client and managing multiple complex projects in a fast-paced environment. Moreover, Microsoft noted that Thompson's requests would require hiring someone to work with Thompson on a full-time basis, indicating that EAs spend a considerable amount of time on functions Thompson was seeking to have someone else do. As such, these requests excused him from performing essential functions. It follows that Thompson is not a qualified person under the ADA.[14]

---

[13] *Credeur v. La. through Off. of Att'y Gen.*, 860 F.3d 785, 792 (5th Cir. 2017) (citing 29 C.F.R. § 1630.2(n)(3)).

[14] *See Barber v. Nabors Drilling USA, Inc.*, 130 F.3d 702, 709 (5th Cir. 1997) ("We cannot say that [an employee] can perform the essential functions of the job with reasonable

No. 20-50218

Thompson further contends that he would have been able to perform the essential functions of an EA with only some of his requests fulfilled, but he has not successfully carried his burden of demonstrating that this is a genuine issue of material fact.[15] The only evidence Thompson points to that might indicate he could perform EA essential functions without all of his requested accommodations is that he was initially recommended as a good fit for the EA role and had some initial positive feedback upon joining the Enterprise Holdings engagement. But after Thompson spent more time in the EA role, his manager became aware of Thompson's shortcomings, including his difficulties communicating, failure to provide meeting notes, missed deadlines, and subpar quality of written materials, which Thompson's manager noted in performance reviews beginning in December 2015. There is no genuine dispute of material fact that Thompson's performance as an EA at this point was deficient and thus no genuine dispute of material fact that Thompson could have performed EA essential functions without all of his requested accommodations.

Even if Thompson were a qualified person under the ADA, he also fails to create a genuine issue of material fact as to whether Microsoft failed to negotiate in a good-faith manner. "When a qualified individual with a disability requests a reasonable accommodation, the employer and employee should engage in flexible, interactive discussions to determine the

accommodation, if the only successful accommodation is for [the employee] not to perform those essential functions.").

[15] *See EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014); *see also Credeur*, 860 F.3d at 793 (noting that employees are not permitted "to define the essential functions of their positions based solely on their personal viewpoint and experience" because "[i]f that were [] the case, every failure-to-accommodate claim involving essential functions would go to trial because all employees who *request* their employer exempt an essential function *think* they can work without that essential function" (internal quotation marks and citation omitted)).

No. 20-50218

appropriate accommodation."[16] "[A]n employer's unwillingness to engage in a good faith interactive process" is a violation of the ADA.[17] The appropriate accommodation need not be "the employee's preferred accommodation," and the employer is free to "choose the less expensive accommodation or the accommodation that is easier for it to provide."[18]

The record reflects that Microsoft appropriately engaged in good faith. Microsoft worked with Thompson over several months, explaining accommodations it deemed unreasonable, asking Thompson to respond with alternate accommodations, and offering to consult directly with Thompson's doctors. Further, Microsoft's placement of Thompson in the job-reassignment program is precisely one of the possible accommodations the ADA contemplates,[19] so by attempting to reassign Thompson, Microsoft was continuing the interactive process rather than terminating it. Because Microsoft had the "ultimate discretion to choose between effective accommodations," it was justified in placing Thompson on job reassignment over his objections.[20]

Thompson next urges that placing him on job reassignment was no reasonable accommodation because there were only three or four jobs in the Austin area and these roles were not a match for his qualifications. The record indicates that Thompson also objected to applying for the positions in his geographic area because they paid a lower salary. Thompson's complaints

---

[16] *EEOC v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009) (citing 29 C.F.R. § 1630.9).

[17] *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999).

[18] *Agro Distrib.*, 555 F.3d at 471 (citations omitted).

[19] *See* 42 U.S.C. § 12111(9)(B).

[20] *Agro Distrib.*, 555 F.3d at 471 (quoting 29 C.F.R. § 1630.9).

No. 20-50218

about the suitability of available positions do not render reassignment an unreasonable accommodation because "[a] disabled employee has no right to a promotion, to choose what job to which he will be assigned, or to receive the same compensation as he received previously."[21] While an employee must have the prerequisites for the new position,[22] there is no evidence that Thompson lacked any necessary qualifications for the jobs located near him. Finally, Thompson's argument that Microsoft did not assist him in finding vacant positions is contradicted by the record, which includes email correspondence between Thompson and a Microsoft employee assigned to assist him with job reassignment. Indeed, the record demonstrates that Thompson, not Microsoft, was responsible for the breakdown of the interactive process seeking reasonable accommodation in refusing to indicate interest in any vacant position.[23]

We affirm the district court's grant of summary judgment for Microsoft on Thompson's failure-to-accommodate claim.

## B

We next consider Thompson's discrimination claim. "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his

---

[21] *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 316 (5th Cir. 2007) (citing *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 622-23 (5th Cir. 2000)); *see also Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997) ("Under the ADA, an employer is not required to give what it does not have.").

[22] *See Gonzales v. City of New Braunfels, Tex.*, 176 F.3d 834, 839 (5th Cir. 1999).

[23] *See Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) ("However, an employer cannot be found to have violated the ADA when responsibility for the breakdown of the informal, interactive process is traceable to the employee and not the employer." (internal quotation marks and citation omitted)).

No. 20-50218

disability."[24] Adverse employment decisions are "ultimate employment decisions such as hiring, granting leave, discharging, promoting, . . . compensating," or demoting.[25] Once a plaintiff establishes a prima facie case, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason" for its actions.[26] The plaintiff then has the burden to prove that the employer's explanation was a pretext for discrimination.[27]

Thompson cannot establish a prima facie discrimination claim for the same reason his failure-to-accommodate claim fails—he is not a qualified individual under the ADA. Even if he were qualified, Thompson was not subject to an adverse employment decision. Thompson offers two incidents as adverse employment actions: (1) Microsoft's decision to remove him from the EA pool after the Enterprise Holdings engagement, and (2) its decision to remove him from the EA role and place him on job reassignment. Neither qualifies as an adverse employment action because they were not "ultimate employment decisions."[28]

Thompson's initial removal from the EA pool in January 2016 was temporary as evidenced by his manager's testimony that the removal was to allow Thompson time to refine his skills so that he could succeed when next staffed as an EA on an engagement. Because Thompson remained an EA during this time and had not been permanently removed from the role, removal from the pool was not an adverse employment action.

---

[24] *LHC Grp.*, 773 F.3d at 697 (internal quotation marks and citation omitted).

[25] *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (internal quotation marks, citations, and emphasis omitted).

[26] *LHC Grp.*, 773 F.3d at 694.

[27] *Id.*

[28] *Pegram*, 361 F.3d at 282.

Transfer can be an adverse employment action where "the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement."[29] According to Thompson, this was precisely the situation when he was placed on job reassignment in July 2016 because his only task was to look for new work, making the "new position" of being on job reassignment objectively worse. But being placed on job reassignment was not an ultimate employment action. It was a temporary placement to allow Thompson to find a new position. Had Thompson actually been transferred, a comparison between the new position and the EA role could indicate an adverse employment action. Since Thompson has chosen to remain on long-term disability leave since September 2016, though, Microsoft has not made any ultimate employment decision.

Because Thompson fails to establish a prima facie case of discrimination, we affirm the district court's grant of summary judgment for Microsoft on Thompson's discrimination claim.

## C

Finally, we turn to Thompson's hostile-work-environment claim. To establish a hostile-work-environment claim under the ADA, Thompson must show that: (1) he belongs to a protected group, (2) was subject to unwelcome harassment (3) based on his disability, (4) which affected a term, condition, or privilege of employment, and (5) Microsoft knew or should have known of the harassment and failed to take prompt, remedial action.[30] "[H]arassment

---

[29] *Alvarado v. Tex. Rangers*, 492 F.3d 605, 613 (5th Cir. 2007) (internal quotation marks and citation omitted).

[30] *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235-36 (5th Cir. 2017) (internal quotation marks and citation omitted).

No. 20-50218

must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment."[31] In determining whether harassment is sufficiently pervasive or severe, we consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[32] "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) do not suffice to alter the terms and conditions of employment."[33]

None of the evidence Thompson relies on indicates that he was subject to harassment pervasive or severe enough to alter the conditions of his employment. Thompson first points to two statements by his manager, Marc Garcia: (1) Garcia's comment that Thompson should "seek a different career" when Thompson told Garcia of his autism and (2) Garcia's statement that Thompson was removed from the EA pool because of his autism. These insensitive statements do not give rise to a hostile-work-environment complaint; they were no more than "a few harsh words," and Thompson does not allege that Microsoft knew or should have known about the comments.[34] Thompson next contends that Garcia harassed him when Garcia required Thompson to prepare a presentation following the Enterprise Holdings engagement and then reported Thompson's poor performance to Microsoft. But "[c]riticism of an employee's work

---

[31] *Id.* at 236 (internal quotation marks and citation omitted).

[32] *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 445 (5th Cir. 2017) (internal quotation marks and citation omitted).

[33] *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); *see also Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003) ("The legal standard for workplace harassment in this circuit is . . . high.").

[34] *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 564 (5th Cir. 1998).

No. 20-50218

performance . . . do[es] not satisfy the standard for a harassment claim" where "the record demonstrates deficiencies in the employee's performance that are legitimate grounds for concern or criticism," as it does here.[35] Finally, Thompson argues that his placement on job reassignment is evidence of a hostile work environment. This, too, is unavailing because an employer's provision of a reasonable accommodation does not constitute harassment.[36]

The district court correctly granted summary judgment for Microsoft on Thompson's hostile-work-environment claim.

## V

We affirm.

---

[35] *Credeur*, 860 F.3d at 796 (citation omitted).

[36] *See id.* at 796-97 (finding that employer's provision of reasonable accommodations that were not Credeur's preferred ones did not constitute actionable harassment).

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 22, 2021

Lyle W. Cayce
Clerk

No. 20-50218

JOHN THOMPSON,

*Plaintiff—Appellant,*

*versus*

MICROSOFT CORPORATION,

*Defendant—Appellee.*

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:18-CV-680

Before HIGGINBOTHAM, SOUTHWICK, and ENGELHARDT, *Circuit Judges.*

## JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED.

IT IS FURTHER ORDERED that each party bear its own costs on appeal.

Certified as a true copy and issued
as the mandate on Jul 14, 2021
Attest: *Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

July 14, 2021

Ms. Jeannette Clack
Western District of Texas, Austin
United States District Court
501 W. 5th Street
Austin, TX 78701-0000

     No. 20-50218    Thompson v. Microsoft
                  USDC No. 1:18-CV-680

Dear Ms. Clack,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

               Sincerely,

               LYLE W. CAYCE, Clerk

               *Renee Mc Donough*

               By: _____
               Renee S. McDonough, Deputy Clerk
               504-310-7673

cc:
     Mr. Nicholas Lawson
     Mr. Avi Moshenberg
     Mr. Eric J. R. Nichols
     Mr. John Thompson
     Mr. Karson Thompson